FILED Rec'd
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y. AM
★ APR 17 2012 ★
BROOKLYN OFFICE
D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CARLOS GUADMUZ, also known as Carlos Guadamuz,

                Petitioner,

    -against-

THOMAS LaVALLEY, Superintendent of Clinton
Correctional Facility Annex,

                Respondent.

------------------------------------------------------------------X

10-CV-4408 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

<u>OPINION & ORDER</u>

ROSS, United States District Judge:

On September 23, 2010, Carlos Guadmuz ("petitioner"), appearing pro se, filed a petition for a writ of habeas corpus challenging his criminal conviction pursuant to 28 U.S.C. § 2254. In his petition, he claims (1) that he received ineffective assistance of counsel because his trial counsel labored under an actual conflict and (2) that the evidence presented was insufficient to support his convictions for robbery, weapon possession, and possession of stolen property. For the reasons stated below, the petition is denied.

## BACKGROUND

On September 25, 2006, petitioner and Martin Ventura ("Ventura") (jointly "co-defendants") were arrested and arraigned in Queens County Criminal Court on a felony complaint. The complaint charged them jointly with Robbery in the first Degree (N.Y. Penal Law § 160.15(3)), two counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10(1), (2)(a)), Assault in the Second Degree (N.Y. Penal Law § 120.05(2)), Criminal Possession of a weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)), and Criminal Possession of Stolen Property in the Fifth Degree (N.Y. Penal Law § 165.40). The charges stemmed from the robbery

1

and assault of Braulio Soto, which occurred on the early morning of September 24, 2006.

I.  Pre-Trial Proceedings

After their arrest, petitioner and Ventura retained Joseph C. Schioppi ("Schioppi") as joint trial counsel, and he represented both of them at their April 2, 2007 arraignment in Queens County Supreme Court. At the commencement of those proceedings, the judge, with the assistance of an interpreter, warned the co-defendants that they had the right to retain individual counsel:

> THE COURT: I understand that both of you want Mr. Schioppi to represent you in this case, is that correct?
>
> THE INTERPRETER [for co-defendants]: Yes. Yes.
>
> THE COURT: I have to explain something to you because there are occasions when it's impossible ethically for one lawyer to represent two people . . . on the same case. I'm going to give you an example of when that arises. I'm not saying that it exists in this case but I'm giving you the example so that you understand what I'm talking about.
>
> Every lawyer has an ethical obligation to represent each of his clients to the best of his ability and to use whatever evidence that is favorable to his client to get the best result possible. There could be a situation where one lawyer represents more than one person on a case, that lawyer may come into information that is very helpful to the one client but hurts his other client. In such a situation the lawyer could not fulfill his obligations to both clients without creating an ethical violation. If he used the favorable information for the one client, he would hurt his other client. And if he failed to use the favorable information he would hurt the client for whom that information was favorable.

Arraignment Transcript (Dkt. No. 5-1), at 2-3. The court thereafter confirmed that petitioner and Ventura understood what the judge had said, that neither believed that such an ethical dilemma could arise in their case, and that they had each spoken about the case with Schioppi and still wanted Schioppi to represent them. Id. at 3-4.

Schioppi filed suppression motions on behalf of both co-defendants. At the June 13, 2007 hearing on the motions, the judge asked Schioppi whether there was any conflict with joint

representation and reminded the co-defendants that they were each entitled to individual counsel. Pre-trial Hearing Transcript (Dkt. No. 5-1), at 6. The defendants confirmed their desire to have Schioppi represent them jointly, and the judge instructed co-defendants and Schioppi to advise him immediately if any potential for conflict arose. Id. The court denied the suppression motions and scheduled the case for trial. Id. at 56.

On July 19, 2007, Schioppi appeared on behalf of co-defendants and requested an off-the-record side bar, at which it was determined that, as a result of what occurred at the suppression hearing, a conflict existed and it would be necessary for defendants to proceed with separate counsel. Declaration of Lisa Fleischmann in Opposition to the Petition for a Writ of Habeas Corpus ("Fleishmann Decl."), Ex. A at 9, Ex. B at 8. There was some indication that, by virtue of the conflict, Schioppi might not have been able to represent either co-defendant. Id., Ex. A at 9. The case was therefore adjourned to August 10, 2007, on which date Carmen Velasquez ("Velasquez") appeared on behalf of Ventura. Schioppi remained counsel for petitioner. Id., Ex. A at 9-10, Ex. B at 8. The case was again adjourned for possible disposition.

Before trial, Schioppi and Velasquez filed nearly identical motions seeking severance based upon antagonistic defenses. The motions indicated that petitioner would seek to demonstrate, at trial, that Ventura was the actual robber and that petitioner was an innocent bystander and argued that it was impossible to reconcile the defense asserted by petitioner with the innocence asserted by Ventura. The people opposed the motion to sever, and it was denied on June 2, 2008. Fleishmann Decl., Ex. A, at 10-12.

II. Trial

Trial commenced approximately a year later, on June 13, 2008. Schioppi represented petitioner; Velasquez represented Ventura, who had absconded and was tried in absentia. The

people's case began with the testimony of the alleged victim, Braulio Soto ("Soto"). He testified that, at approximately 1:45 a.m. on September 25, 2006, he had left the restaurant where he had eaten dinner with his girlfriend and began walking towards his home. Trial Transcript (Dkt. No. 5-1, 5-2, 5-3), at 35-36. At the corner of 37th Avenue and 105th Street, two men approached him, one in front and one behind. Id. at 39, 150. The man in front, whom Soto identified as co-defendant Ventura through an arrest photograph, demanded Soto's property. Soto gave him his watch, which Ventura passed to the other man, whom Soto did not see well enough to identify. Id. at 40, 43, 70-73, 84. Ventura then held a knife towards Soto and demanded everything Soto had. Id. at 40, 44. The man standing behind Soto pushed Soto forward, pulled the gold chain from his neck, and took Soto's wallet and cell phone from his belt as Soto fell to the ground. Id. at 45-48. Ventura held out the knife and thrust it at Soto, stabbing him in the face. Id. at 51.

From his position on the ground, Soto saw the men running towards 37th Avenue. Id. at 51-52. According to Soto, quickly thereafter, he heard police coming from the corner of 37th Avenue, got up, and went towards them to get emergency help. Id. at 51-52, 55, 155. When he approached the corner, he saw two men in custody. Id. at 53. Soto gesticulated and told the officers, in Spanish that the men they had arrested had assaulted and robbed him. Id. at 54. Soto was transported to the hospital and given medical treatment, including stitches. Id. at 85. He identified his chain, watch, Metrocard, wallet, and cell phone, which had been recovered from the scene and were introduced into evidence. Id. at 99.

Police officers David Francis ("Officer Francis") and Robert Crozier ("Sergeant Crozier") testified that, while driving in their patrol van at approximately 2:20 a.m., they saw Ventura and petitioner running together at the corner of 105th Street and 37th Avenue. Id. at 259-60, 264-67, 607, 610-11, 632, 657. According to the officers, when co-defendants saw the

police van, they stopped running and began to empty the contents of their pockets onto the streets. Id. at 265-68, 385, 612, 657-59. The officers exited their vehicle and, when Sergeant Crozier saw a knife in Ventura's hand, drew their weapons and ordered the men onto the ground. Id. at 269-70, 272, 393, 505, 613-14, 660-62. While the co-defendants were on the ground, the officers heard someone screaming from down the block. Id. at 272-73, 616-18. Soto walked toward them, bleeding and yelling in pain, and he motioned toward the men on the ground while pointing to his face. Id. at 272-75, 618. Officer Francis sat Soto down on the sidewalk and called for an ambulance. Id. at 276, 410. Soto was taken to a local hospital, where he later confirmed that the men he had pointed out were the men who robbed and assaulted him. Id. at 347-51.

After Soto left, Officer Francis noticed a cell phone underneath a nearby parked car and, from his personal phone, called the cell phone number that Soto had given him. The cell phone under the car rang, and Officer Francis's number appeared on it. Id. at 277, 279, 283, 405. The officers also recovered two wallets, a watch, the knife Ventura had been holding, cash from Ventura's pocket and wallet, and a gold chain in the vicinity of where co-defendants were arrested. Id. at 291-92, 300, 304, 355, 630. They noticed that Ventura's knife had a distinctive hook on it and was bloodied. Id. at 270, 419-20, 505, 614, 662. Testing later revealed that blood found on Ventura's sneakers matched Soto's DNA profile. Id. at 314, 553-54, 565, 574. Evidence was also introduced that, at arraignment, Ventura had given petitioner's home address as his alternate address. Id. at 775.

Neither petitioner nor Ventura presented witnesses. Petitioner's counsel argued that the state had not met its burden of proving that petitioner was guilty, beyond a reasonable doubt, of the crimes charged. He emphasized that the victim did not identify petitioner and that, although

5

petitioner was at the scene, there was no forensic evidence tying petitioner to the crimes. Ventura's attorney also argued that the state had not sufficiently proven Ventura's guilt.

III.   Verdict and Sentence

On June 23, 2008, a jury convicted Ventura of all counts and petitioner of all but the assault count. Id. at 995-1005. On July 3, 2008, the court sentenced petitioner to concurrent prison terms of ten years on the first degree robbery count, five years on each of the second-degree robbery counts, and one year each on the weapon possession and stolen property possession counts. Sentencing Transcript (Dkt. No. 5-3), at 15-16. Petitioner was also given a five-year period of post-release supervision. Id. Before being sentenced, petitioner made a statement to the court wherein he alleged that two other men were involved in the assault but had run off and he maintained that he was an innocent bystander. Id. at 14-15.

IV.   Petitioner's Appeal

In May 2006, petitioner, through counsel, appealed his conviction on the grounds that (1) petitioner received ineffective assistance of counsel where counsel labored under an unwaivable, actual conflict of interest and actively protected his former client by not presenting a defense that Ventura was guilty and petitioner was innocent and (2) that the evidence was insufficient to support petitioner's convictions. Fleischmann Decl., Ex. A. On June 30, 2009, the Appellate Division, Second Department, unanimously affirmed petitioner's conviction. People v. Guadmuz, 63 A.D.3d 1178 (N.Y. 2d Dep't 2009). With regard to petitioner's ineffective assistance of counsel claim, the court held:

> The defendant was not denied the effective assistance of counsel due to an alleged conflict of interest. A defendant alleging ineffective assistance of counsel based on a conflict of interest must do more than show that defense counsel had a potential conflict of interest. To prevail, the defendant must establish that the conflict of interest in fact affected the conduct of his or her defense.

6

Id. at 1178. The court stated that petitioner's challenge to the legal sufficiency of the evidence was not preserved but nonetheless proceeded to find that, viewing the evidence in the light most favorable to the prosecution, "it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt, based upon an acting-in-concert theory." Id. Petitioner's counsel thereafter sought leave to appeal to the New York Court of Appeals on the ineffective assistance of counsel issue only. Fleischmann Decl., Ex. D. Petitioner's application was denied. Id., Ex. F. The instant petition followed.

## DISCUSSION

I. **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. Here, petitioner does not argue that the adjudication of his claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," so at issue is only whether the state court's decision resulted in a decision involving an unreasonable application of clearly established Federal law. Id.

The statutory language "clearly established Federal law, as determined by the Supreme

Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

II.  Ineffective Assistance of Counsel Claim

"The right to counsel guaranteed by the Sixth Amendment is a fundamental right." Cuyler v. Sullivan, 446 U.S. 335, 343 (U.S. 1980). To establish a Sixth Amendment violation, a petitioner generally must demonstrate both that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 688, 688, 698 (1984); see Mickens v. Taylor, 535 U.S. 162, 166 (2002). In analyzing a claim that counsel's performance did not meet constitutional standards, the court must "indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and "affirmatively entertain the range of possible reasons [petitioner]'s counsel may have had for proceeding as they did," Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011)

8

(citation and internal quotation marks omitted).

The Sixth Amendment right to effective assistance of counsel "includes the right to representation by conflict-free counsel." United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998). Strickland prejudice is presumed, therefore, "when counsel labors under an actual conflict of interest." Mickens, 535 U.S. at 172 n.5 (quoting United States v. Cronic, 446 U.S. 648, 662 n.31 (1984) (internal quotation marks omitted)). However, "the possibility of conflict is insufficient to impugn a criminal conviction." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Instead, "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens, 535 U.S. at 172; Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005).

Additionally, when ineffective assistance of counsel claims are presented on collateral habeas review, the court assesses them subject to the strictures of AEDPA and must be "doubly deferential" in reviewing the state court's determination that counsel acted effectively. Knowles v. Mirzayance, 556 U.S. 111 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (per curiam)); see 28 U.S.C. § 2254(d). In order to prevail on a standard ineffective assistance of counsel claim on habeas review, a petitioner must show not only that counsel's performance fell below the Strickland standard but also that the state court's adjudication of the Strickland standard was itself unreasonable. See Harrington, 131 S. Ct. at 785. Similarly, when evaluating a Sullivan conflict claim, relief is available only if it was unreasonable for the state court to determine that petitioner failed in showing that there existed a plausible, objectively reasonable alternative defense strategy that counsel might have pursued but did not because of an actual

conflict. See Eisemann, 401 F.3d at 107-08, 110-11.

Petitioner does not here meet the burden for establishing entitlement to habeas relief, as he has not shown that there existed an actual conflict that adversely affected his attorney's performance.[1] Schioppi withdrew from dual representation when it became apparent, after the denial of the suppression motion, that a conflict had emerged and continued advocacy on behalf of both defendants would not be possible. From that point, he no longer actively represented the interests of both co-defendants in the manner that conflict-based ineffective assistance of counsel claims usually arise. See Sullivan, 446 U.S. at 347 ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."). Petitioner's assertion that Schioppi nonetheless continued to try to protect Ventura and his interests, giving rise to an actual conflict of interest that entitles him to relief, is not supported by the record.

Petitioner's speculation that Schioppi changed his planned trial strategy because of an alleged allegiance to Ventura is based on nothing more than speculation, and petitioner has failed to prove that counsel's non-pursuit of the alterative defense strategy was "forgone as a consequence of [Schioppi's alleged] conflict of interest." Eisemann, 401 F.3d at 108. There is no indication, for example, that pursuing a strategy that placed blame exclusively on Ventura would have implicated confidences revealed to Schioppi in the course of his representation of Ventura. See United States v. Blount, 291 F.3d 201, 212 (2d Cir. 2002) (rejecting Sixth Amendment claim where defendant had not shown that an attorney's firm's prior representation

---

[1] The court finds, contrary to petitioner's claims, that petitioner's waiver of conflict-free counsel was not constitutionally deficient. However, such a finding does not end the court's inquiry because "[e]ven when a defendant waives his attorney's potential conflict of interest, he may still claim ineffective assistance of counsel if that waiver turns out to be detrimental to him at trial." Kopp v. Fischer, 811 F. Supp. 2d 696, 705 (W.D.N.Y. 2011) (citing Wheat v. United States, 486 U.S. 153, 161 (1988)); Jean v. Green, No. 07 Civ. 11530, 2011 U.S. Dist. LEXIS 144353, 18-20 (S.D.N.Y. Dec. 14, 2011); see also United States v. Schwarz, 283 F.3d 76, 95 (2d Cir. 2002) ("An actual or potential conflict cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation.").

10

of a government witness had any effect on the attorney's performance by, for example, suggesting that counsel had information from the witness that could have been used in defendant's defense). Instead, it is possible to conclude, as respondent argues, that counsel made a valid strategic decision not to highlight the guilt of Ventura because there was substantial evidence linking petitioner to Ventura and it, therefore, was not in petitioner's best interest to do so. See Resp't's Mem. of Law in Opp'n to Petition ("Resp't's Mem."), at 26. Because the record permits such a conclusion, this court cannot deem unreasonable the state court's determination that petitioner failed to establish that counsel's potential conflict of interest affected the conduct of petitioner's defense.

This conclusion is reinforced by the reasoning employed by the Second Circuit in Tueros v. Greiner. 343 F.3d 587 (2d Cir. 2003). There, the court evaluated a claim brought by a habeas petitioner alleging that his counsel had labored under an actual conflict where she believed she owed a duty of confidentiality to a witness whose testimony could have helped petitioner at trial. Petitioner's counsel had subpoenaed the witness to provide exculpatory testimony. Id. at 589. In the course of a pre-trial discussion, the witness disclosed to counsel that he was a fugitive. Id. Concerned that the witness had made this confession on the assumption that counsel would keep his confidences, counsel asked the court to assign counsel to the witness. Id. The witness thereafter invoked his Fifth Amendment privilege and did not testify, and counsel refused to reveal the exculpatory information she had gained from the witness. Id. The court declined to treat the situation as presenting an actual conflict.

Recognizing the potentially detrimental impact of a subjective conflict on the quality of representation, the Second Circuit concluded that Sullivan's holding was not broad enough to encompass such a situation. Id. at 595. In discussing its limitation of the scope of an "actual

conflict" to conflicts arising from actual duties, the court observed that such an approach was reasonable in light of the policies that animate the standards used to vindicate the right to counsel in different contexts:

> Only conflicts arising from actual duties are structural flaws in our adversarial system of justice that guarantees each defendant a lawyer functioning in an institutional role that permits zealous advocacy. A purely subjective conflict is, in contrast, an attorney's individual shortcoming, flowing from an incorrect assessment of the situation and devoid of any actual obligation. Purely subjective conflicts are, in fact, no more than a polite way of saying personal mistakes, a traditional type of ineffectiveness of counsel to which Strickland rather than Sullivan is routinely applied. Reserving Sullivan's limited presumption of prejudice to remedy the structural flaw that occurs when a lawyer is placed in the untenable situation of being required to serve two masters is a reasonable line to draw. Furthermore, where a subjective conflict causes injury to the defendant, Strickland may provide a remedy.

Id. at 597. Though petitioner has alleged a potential conflict of interest, he has not shown that the type of structural defect that Sullivan seeks to remedy actually existed or arose, and petitioner's ineffective assistance of counsel claim must proceed under Strickland. As discussed in the state's brief, there are no grounds for finding Schioppi's representation of petitioner constitutionally defective under that standard. Therefore, the state court's decision not to extend relief to petitioner on this basis was not an unreasonable interpretation of clearly established Supreme Court law, and there is no justification for providing habeas relief on the basis of ineffective assistance of counsel.

III. Sufficiency of the Evidence Claim

As a second alleged ground for habeas relief, petitioner claims that the evidence submitted at trial was constitutionally insufficient to support his convictions "where there was no direct evidence that [petitioner] participated in a robbery, no in-court identification of [petitioner], no evidence that [petitioner] possessed a weapon or any stolen property, or any forensic evidence which linked [petitioner] to either the co-defendant or the victim." Petition, at

2. Respondent argues that habeas review of this claim is procedurally barred and that the claim is, in any event, meritless.

Federal habeas review is generally not available where a claim has already been decided by a state court, and the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Specifically, federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman, 501 U.S. at 749-50; Harris v. Reed, 489 U.S. 255, 262 (1989)). To determine whether the state court found petitioner's claim to be procedurally defaulted under state law, a federal court must look to the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). A procedural bar will be found only if the state court's reliance on state law is "clear from the face of the opinion," Fama, 235 F.3d at 809 (internal quotation marks and citation omitted), and a state procedural rule is adequate only where it is "firmly established and regularly followed" by the state, Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James v. Kentucky, 466 U.S. 341 (1984)).

In the last reasoned state court opinion that discussed this claim, the Appellate Division stated that petitioner's challenge to the sufficiency of the evidence was unpreserved for review because petitioner had failed to address any specific ground as a basis for dismissal in the Supreme Court. Guadmuz, 63 A.D.3d at 1178. The state court's reliance on this procedural bar is clear from the face of the opinion. Fama, 235 F.3d at 809-11. The rule is also adequate insofar as New York state courts have consistently held that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), requires that the issue on appeal be

"brought to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78 (1995); see also People v. Hawkins, 11 N.Y.3d 484, 491-92 (2008). This court is consequently precluded from reviewing the claim.

Petitioner has not otherwise shown that the claim may be reviewed. In order for a court to review a claim that is otherwise procedurally barred, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner does not show cause for default, and he cannot demonstrate prejudice: despite petitioner's failure to preserve the claim, the Appellate Division nevertheless found that the evidence presented was legally sufficient to establish petitioner's guilt beyond a reasonable doubt on an acting-in-concert theory. Guadmuz, 63 A.D.3d at 1178. As explained in respondent's brief, this finding was not erroneous. See Resp't's Mem. at 33-36. Nor has petitioner shown that a failure to consider the claim will result in a fundamental miscarriage of justice, as petitioner offers no new and reliable evidence that was not previously presented.[2] See Schlup v. Delo, 513 U.S. 298, 321, 324 (1995) (stating that the miscarriage of justice exception is explicitly tied to petitioner's innocence and that petitioner must support allegations of constitutional error with new reliable evidence).

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. In addition, this court certifies pursuant to 28

---

[2] As he did prior to sentencing, petitioner claims that he was an innocent bystander and that Ventura and two of Ventura's friends were responsible for the robbery and assault. See Response by Petitioner, at 3.

U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-445 (1962). The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
———————————————
Allyne R. Ross
United States District Judge

Dated:    April 12, 2012
             Brooklyn, New York

SERVICE LIST:

**Petitioner:**

Carlos Guadmuz
# 08-A-3911
Bare Hill Correctional Facility
181 Brand Road
P.O. Box 20
Malone, NY 1295